IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| Digital Retail Apps, Inc.,<br><br>Plaintiff,<br>v.<br><br>H-E-B Grocery Company, LP,<br><br>Defendant. | Civil Action No.: 6:19-cv-00167-ADA<br><br>JUDGE ALBRIGHT<br><br>**Jury Trial Demanded** |

**STIPULATED ORDER REGARDING ELECTRONICALLY STORED INFORMATION**

The parties, by and through their undersigned counsel, and subject to the approval of the Court, hereby agree as follows regarding the production of electronically stored information ("ESI"):

1. **Purpose.** This Order will govern discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules and Standing Orders, and any other applicable orders and rules.

2. **Cooperation.** The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Local Rules and Standing Orders.

3. **Modification.** This Order may be modified for good cause. If the parties cannot resolve their disagreements regarding such modifications, the parties shall submit their competing proposals and a summary of their dispute to the Court.

4. **Preservation.** The parties acknowledge that they have an obligation and duty to take reasonable and proportional steps to preserve discoverable information in their possession,

custody, or control. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

    **a.** Only ESI created or received between June 1, 2011 and February 19, 2019 need be preserved.

    **b.** The parties agree that the following sources of data are not reasonably accessible and they do not need to preserve them: backup media, digital voicemail, instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging, text messages, and automatically saved versions of documents. The parties agree that data from these sources could contain relevant information, but under the proportionality factors they should not be preserved.

    **c.** Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody, or control.

**5. Format of Production.**

    **a. General.** To the extent possible, ESI shall be produced in single page Group IV TIFF format at a resolution of at least 300 dots per inch (dpi). Single page TIFF images should be named according to the unique Bates number, followed by the extension ".TIF". Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). Each production shall include Relativity-compatible load file(s) that indicates the beginning and ending of each document. The load file should be an ASCII delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (*e.g.*, Concordance). The first line of each text file must contain a header identifying each data field name (*i.e.*, header row). Each document within the database load file must contain the same

number of fields as defined in the header row. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. ESI shall be produced in their original color.

      b.    **Text Files.** For each document originating in electronic format, a text file containing the full text of each document should be provided along with the image files and metadata. Text of native files should be extracted directly from the native file. The text file should be named according to the unique Bates number, followed by the extension ".TXT". The parties agree that the full text and/or OCR of any document will not be contained within a database load file, but rather as a standalone file with each text file containing an entire document as they are defined.

      c.    **Hard Copy Documents.** All black and white hard copy documents will be scanned and produced in electronic form. The hard copy documents shall be converted to single page TIFF images and produced following the same protocol set forth herein or otherwise agreed to by the parties. Images of all file labels, file headings, and file folders associated with any hard copy document will be produced with the images of the hard copy documents. Document breaks for paper documents shall be based on Logical Document Determination (or "LDD"), rather than on physical document breaks. The database load file shall include the following fields: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, CONFIDENTIALITY, REDACTED, and CDVOLUME.

      d.    **Native files.** Files that are not easily converted to image format, such as Excel, audio, video, and database files, should be produced in native format. The parties agree that when producing a native file, they will include a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for a native file should be branded with a unique Bates number and state "DOCUMENT PRODUCED IN NATIVE

FORMAT" on the TIFF image. The native file should then be renamed to match the Bates number assigned to the document with its original file extension. The filename field produced in the production load file that reflects the original metadata should maintain the original file name. To the extent a file is produced in native format, the file must also be produced according to the provisions set forth in the parties' Stipulated Protective Order (Dkt. 43).

    e. **Metadata fields and processing.** Each of the metadata and coding fields set forth in the below table that can be extracted shall be produced for each document. The parties are not obligated to manually populate any of the fields in the table if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, CONFIDENTIALITY, REDACTED, OTHER_CUSTODIAN, and CDVOLUME. The parties agree that the OTHER_CUSTODIAN field should be populated by the party or the party's vendor to identify other custodians in possession of the document before deduplication was applied to the data set. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents are correct.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Individual from whom the documents originated |
| OTHER_CUSTODIAN | Individual(s) that had electronic files that were removed due to de-duplication |
| DOCTYPE | Description of document (Email, Attachment, Edoc, Hard Copy) |

| | |
|---|---|
| EXTENSION | Characters of the filename indicating the relevant program used to open the file (file extension) |
| HASHVALUE | The MD5 or SHA-1 hash value. |
| NATIVELINK | Native File Link for agreed upon native files, if applicable (for example Excel files) |
| SUBJECT | Subject line of email |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TIMESENT | Time email was sent |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document, loose files and attachments to email. |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) |
| REDACTED | "Yes" should be populated if a document contains a redaction. |
| CONFIDENTIALITY | The confidential designation should be populated. |
| CDVOL | The Production CD volume name. |

  f.  **Further production.** The parties reserve the ability to request other file types be produced in native form or another reasonably usable or color form upon review of the other party's production, as well as their rights to object to any such request.

  6.  **Documents Protected From Discovery.**

  a.  Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example,

the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

    **b.**  In the event the receiving party receives a document that it reasonably believes may be covered by the attorney-client privilege or work product doctrine, the receiving party shall immediately notify the producing party of the producing party's potential inadvertent disclosure of privileged or work product information and identify the document by Bates number. The receiving party shall also immediately cease all access to and reproduction of the document that may have been inadvertently disclosed and notify all others under its supervision or control who have access to the document to immediately do the same. The producing party shall confirm within five (5) business days whether it claims the document is protected by the attorney-client privilege and/or work product doctrine. If the producing party makes such a claim, the receiving party shall destroy all copies of the document within five (5) business days of receiving the producing party's claim of privilege or work product protection and notify all others under its supervision or control who have a copy of the document to immediately do the same. The producing party shall subsequently log the document over which it claims protection on a privilege log.

    **c.**  In the event of inadvertent disclosure discovered by the producing party, the producing party shall immediately provide notice of such inadvertent disclosure, identifying the allegedly protected document by Bates number. The receiving party shall return or confirm in writing that it has destroyed all information identified by the producing party pursuant to this paragraph and notified all others under its supervision or control to do the same within five (5) business days of the date of the notice.

    **d.**  The receiving party reserves all rights to challenge any claim of privilege made pursuant to Paragraphs 6(b) or 6(c). The receiving party shall not use the content of ESI that

6

the producing party asserts is protected by any applicable privilege or doctrine, or the fact of inadvertent production, to challenge the protection asserted. Challenging a claim of privilege under this paragraph does not supersede or otherwise affect a party's obligation to destroy a document over which a party has asserted a claim of privilege or work product. If a party successfully challenges a privilege or work product claim under this paragraph, the producing party shall reproduce the document.

    **e.**  Attorney-client communications or attorney work product that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

  **7.**  **ESI Search and Production Protocol**

    **a.**  General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email, parties must propound specific email production requests. Non-email ESI, including electronic files, shall be collected for each individual likely to have relevant ESI from the personal computers, network resources, and other electronic devices that those individuals use for work purposes except for mobile phones.

    **b.**  The parties shall meet and confer to reach agreement on a reasonable list of custodians for purposes of collection, review, and production of email. Within 14 days of the *Markman* hearing, each party shall provide a proposed list of individual custodians who are knowledgeable about and were involved with the following subjects in this case:

- the asserted patents (including conception, reduction to practice, diligence in reduction to practice, and prosecution);

- development, design, operation, use, marketing and sales of any product alleged by DRA to practice any claim of the asserted patents;

- the first public disclosure, use, sale, and/or offer for sale of the claimed inventions;

- the first disclosure by a named inventor of the claimed invention to any other person;

- the development, design, and operation of the accused product(s);

- sales and marketing of the accused product(s); and

- other damages-related information, including comparable licenses.

  **c.** Email production requests shall identify specific custodians and time frame(s) to be searched.

  **d.** Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon a showing of good cause.

  **e.** Each requesting party shall limit its email production requests to a total of five (5) search queries per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search queries per custodian, upon a showing of good cause.

  **f.** Search queries shall be narrowly tailored to particular issues. Indiscriminate terms used in search queries, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g.,

8

"computer" and "system," "computer" w/x "system," "computer" but not "system") narrows the search and shall count as a single search query. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search and thus each word or phrase shall count as a separate search query unless they are variations of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party request search queries beyond the limits agreed to by the parties or granted by the Court pursuant to this section, the producing party may decline to respond or request that the producing party bear all costs caused by such additional discovery.

      g.     If a producing party determines, either upon receipt or thereafter, that one or more proposed search queries results or will likely result in an unduly burdensome quantity of excessive or irrelevant information ("false hits"), the producing party shall promptly contact the requesting party to request a reassessment of the proposed search query, and the parties shall meet and confer in good faith to discuss ways to limit the number of false hits, such as application of further negative search restrictions (*e.g.*, if a single search was for "chip" and ninety percent of the resulting documents came from the irrelevant term "potato chip," a negative limitation to ignore documents only returned as a result of "potato chip" may be applied to remove these documents). The party receiving production shall not unreasonably oppose such further restrictions designed to filter nonresponsive search results.

      h.     The parties shall produce email attachments sequentially after the parent email.

      8.     **Technology Assisted Review.** Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

9. **Encryption.** Industry-standard encryption tools and practices must be used when transferring confidential or attorneys' eyes only data between parties. The parties may serve pleadings, discovery, motions and supporting documents, and expert reports containing attorneys' eyes only information to only each other by standard email.

10. **Cost Shifting.** A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

Dated at Waco, Texas, this \_\_7th\_\_ day of \_\_August\_\_, 2019

BY THE COURT:

_____
ALAN D. ALBRIGHT
UNITED STATES DISTRICT COURT

**STIPULATED AND AGREED TO:**

By: /s/ Robert R. Brunelli
    Jeffrey G. Toler
    Texas Bar No. 24011201
    jtoler@tlgiplaw.com
    Benjamin R. Johnson
    Texas Bar No. 24065495
    bjohnson@tlgiplaw.com
    Aakash Parekh
    Texas Bar No. 24059133
    aparekh@tlgiplaw.com
    TOLER LAW GROUP, PC
    8500 Bluffstone Cove
    Suite A201
    Austin, TX 78759
    (512) 327-5515

Todd P. Blakely (Admitted *pro hac vice*)
    tblakely@sheridanross.com
Robert R. Brunelli (Admitted *pro hac vice*)
    rbrunelli@sheridanross.com
Matthew C. Holohan (Admitted *pro hac vice*)
    mholohan@sheridanross.com
Tara K. Hawkes (Admitted *pro hac vice*)
    thawkes@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone:   303-863-9700
Facsimile      303-863-0223
litigation@sheriddanross.com

*Attorneys for Plaintiff Digital Retail Apps, Inc.*

By: /s/ Joseph P. Reid
    Thomas N. Millikan, *Pro Hac Vice*
    Texas State Bar No. 24105276
    California State Bar No. 234430
    TMillikan@perkinscoie.com
    Joseph P. Reid, (Admitted *pro hac vice*)
    California State Bar No. 211082
    JReid@perkinscoie.com
    PERKINS COIE LLP
    11452 El Camino Real, Suite 300
    San Diego, CA 92130-2080

Skyler M. Howton
Texas State Bar No. 24077907
SHowton@perkinscoie.com
PERKINS COIE LLP
500 N. Akard Street, Suite 3300
Dallas, TX 75201-3347

*Attorneys for Defendant H-E-B Grocery Company, LP*