**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| DIGITAL RETAIL APPS, INC.,<br><br>    Plaintiff,<br>v.<br><br>H-E-B, LP,<br><br>    Defendant. | Civil Action No.: 6:19-cv-00167-ADA<br><br>JUDGE ALBRIGHT<br><br>**Jury Trial Demanded** |

**PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF**

Plaintiff Digital Retail Apps, Inc. ("DRA"), pursuant to the Court's Order Governing Proceedings – Patent Case (Dkt. No. 35), hereby provides its Reply Claim Construction Brief. Defendant H-E-B, LP ("H-E-B") persists in its effort to impose artificial limitations on easily-understood claim terms that require no construction. DRA explained in its opening brief that the terms are entitled to their plain and ordinary meanings, and that H-E-B's proposed constructions and indefiniteness arguments have no basis in law. The Court should adopt DRA's claim construction positions and afford the asserted claims their full scope under the law.

**I. DRA HAS NOT MISCHARACTERIZED THE TECHNOLOGY**

H-E-B begins its brief by attacking the patents-in-suit and their inventor, Wendy MacKinnon. H-E-B's accusations are baseless. DRA has never claimed that it was "the first to foresee a world where retail payments would become automated," as H-E-B suggests. Dkt. No. 56 at 1. Rather, DRA's explanation of the technology merely summarizes Ms. MacKinnon's innovative approach to self-checkout claimed in the patents-in-suit. H-E-B's purpose in denigrating Ms. MacKinnon's technology appears to be in service of its effort to artificially limit

the asserted claims to visual inspections. *See id.* at 2. But these attacks are both meritless and irrelevant.

## II. H-E-B'S DISCUSSION OF THE SKILL IN THE ART IS IRRELEVANT

H-E-B bears the burden to rebut "the presumption that claim terms are to be given their plain and ordinary meaning." *Cisco Sys., Inc. v. Innovative Wireless Sols., LLC*, No. 1:13-CV-00492-LY, 2015 WL 128138, at *5 (W.D. Tex. Jan. 8, 2015). To do that, H-E-B might have suggested its proposed constructions were required due to some characteristic or knowledge common to skilled artisans. H-E-B has not, though, explained why a person of ordinary skill, as H-E-B defines that person, would require constructions other than the plain and ordinary meaning. H-E-B failed, in either of its briefs, to tie any of its claim construction arguments to the level of ordinary skill in the art, making the argument irrelevant.

## III. DISPUTED TERMS

### A. H-E-B Has No Argument That Returns Are Excluded From The '781 Patent

H-E-B failed to timely and properly raise the issue of whether the '781 Patent's claims cover returns. In its responsive brief, H-E-B attempts to salvage the issue by falsely accusing *DRA* of "gotcha" tactics. But H-E-B admits that return activity was identified in DRA's infringement contentions, which were served on July 8, 2019. H-E-B thus has no excuse for violating the Court's Scheduling Order by improperly raising claim construction issues out of time, and DRA's decision to point that out is not a "gotcha" tactic.

H-E-B secondarily argues – for the first time – that the "returns" issue should be addressed by the Court in the abstract, disconnected to any specific claim term. But H-E-B's reliance on *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1312 (Fed. Cir. 2007) is misplaced. In that case, there was no argument that the claim construction dispute was untimely. More importantly, though, the allegedly abstract claim construction issue in *Ormco* was, in fact, tied to specific claim

terms.  *Id.* (identifying the specific terms in the various claims to which the disputed issue pertained).  Here, H-E-B managed to identify a claim term in the '506 Patent that implicated the issue of whether returns were covered, but chose *not* to do so for the '781 Patent.  It thus waived any such arguments and *Ormco* does not require a different result.

H-E-B asks the Court to ignore its own Scheduling Order and allow the parties to raise abstract claim construction issues that are "not tied to a claim term" at any time.  Dkt. No. 56 at 5 n.4.  Unsurprisingly, H-E-B cites no legal authority for this position.  There is none, and if adopted, H-E-B's position would lead to judicial anarchy.  But to the extent the Court entertains H-E-B's arguments, those arguments are meritless as to the '781 Patent for the reasons explained in DRA's responsive brief.  Dkt. No. 55 at 8-11.

### B.   The "User Of the Retailer Device" Is Not Limited By One Purpose Of One Embodiment

H-E-B's discussion of the specification in connection with "user of the retailer device" does nothing more than solidify the conclusion that H-E-B is attempting to import claim limitations from the specification into the claims.  DRA has explained at length why the illustrative passages on which H-E-B relies do not limit the clear claim language.  The plain language of the claim – including, importantly, the fact that the term "user"[1] is used independently of "consumer" and "retailer" – affirms the presumption that the plain and ordinary meaning applies, and H-E-B has done nothing to rebut it.

---

[1] DRA's citation to the specification are proper because they illustrate the inventor's generic use of the term "user" in connection with a self-checkout system.  Again, H-E-B's proposed limitation on the word "user" to require retail personnel would frustrate the overall purpose of the invention, which is self-checkout.

H-E-B then asserts that "DRA's proposed construction . . . would fundamentally undermine the theft and loss prevention purposes of the patents." Dkt. No. 56 at 8. This, too, is incorrect. Importantly, H-E-B acknowledges that one purpose of the patents is "theft *and loss* prevention." *Id.* (emphasis added). By providing the consumer with a means to verify its purchase, the asserted claims reduce "loss" through *inadvertent* failure to pay. Further, upon verifying the purchase, the consumer's unique token, which acts as a digital receipt, attains a post-verified status such that it cannot be used again. '506 Patent at 47:62-64. This is key to loss prevention, as an unverified digital receipt could potentially be used fraudulently at a later time or at a different location. Verification of the token cation of the token *by the consumer* is thus consistent with the theft *and loss* prevention purpose of the patents. Thus, DRA's construction does not "contradict the plain language of the claims and specification." *Id.* at 9.

DRA's construction is broad enough to encompass both the illustrative embodiments H-E-B cites and the self-checkout system discussed by DRA. DRA's construction is also consistent with the purpose of the invention, and does not recapture any disclaimed subject matter. Dkt. No. 55 at 6-8.

    C.    ***Williamson* Does Not Categorically Bar Software As A Structure**

H-E-B relies heavily on *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015), faulting DRA for not anticipating this reliance in DRA's opening brief. But DRA explained in its responsive brief why its position on "first communication module" is consistent with *Williamson* and other case law addressing means-plus-function claiming.[2] DRA explained that the modifier

---

[2] H-E-B implies that DRA violated its duty of candor to the Court. Dkt. No. 56 at 10. This is a false and improper accusation, as all of DRA's arguments and case cites have been accurate and legally supported. As shown in H-E-B's baseless Section 285 letter, H-E-B appears intent on pursing inflammatory litigation tactics rather than resolving this case on the merits.

4

"first communication" to the nonce word "module" removes that term from means-plus-function claiming. Dkt. No. 55 at 11-13.

Further, to the extent the term is given means-plus-function construction, H-E-B is simply wrong in asserting that software can never be structure. Dkt. No. 56 at 10-11. DRA cited multiple legal authorities holding that software can be a corresponding structure. H-E-B's rigid and categorical assertion that software is not structure is plainly wrong. In any case, DRA explained that the '506 Patent includes a sufficient algorithmic disclosure of the software structure to satisfy the means-plus-function requirements. Dkt. No. 55 at 12-13. In particular, as in *St. Isidore Research, LLC v. Comerica Inc.*, No. 2:15-CV-1390-JRG-RSP, 2016 WL 4988246, at *13 (E.D. Tex. Sept. 19, 2016), the '506 Patent recites a "step-wise description of the operation of the 'module' [that] forms an algorithm."

H-E-B then mischaracterizes DRA's explanation of the service provider API. For the first function, "transmitting a request for the server to verify the consumer's in-store purchase of goods and services, said request including the unique token." The specification explains that this is done *via* the service provider API, as required by the claims, as the retailer's device sends the request to the API for verification by the server. As explained in DRA's responsive brief, the first communication module is not required to perform all communication functions itself—it is a conduit "via" which these communications take place. Dkt. No. 55 at 14.

Similarly, H-E-B's contention that the API cannot be the structure for the second and third functions because the API "exists on the server at the opposite end of these functions" ignores the fact that the API is the structure on the server "via" which these communications take place. Dkt. No. 56 at 12. By mischaracterizing the functions of the first communication module, H-E-B

5

ignores the fact that the API facilitates communication with the server, as required by the claim language.

H-E-B has thus neither met its burden to show that the term "first communication module" is a means-plus-function term, nor met its burden to prove by clear and convincing evidence that the term is invalid if it is a means-plus-function term. The Court should reject all of H-E-B's arguments regarding this term.

### D. The Court Should Reject H-E-B's Effort To Limit "Spot-Checking" To The Distinguished Prior Art

H-E-B has neither shown that the preamble term "spot-checking" is limiting, nor that the term is limited to the prior art visual inspection process distinguished in the specification. Further, H-E-B never identified "spot-check" (or "verify") as terms to be construed during the claim construction procedure. Thus those terms are not before the Court. That should be the end of this issue, but DRA provides its position just in case the Court wishes to explore the term's meaning.

#### 1. "Spot-Checking" is Not Limiting

H-E-B's only argument that the preamble term "spot-checking" limits the claim is to point to the use of *separate* preamble terms as antecedent bases for terms in the body of the claim. Dkt. No. 56 at 13-14. The preamble of Claim 1 of the '506 Patent recites:

> A computer-implemented method for *spot-checking* and verifying a consumer's in-store purchase of goods and services from a retailer prior to the consumer exiting the store, said retailer having an *electronic device* capable of communicating with a server and with a consumer's *mobile device*, the method comprising the following steps:

'506 Patent, Cl. 1 (emphasis added). The antecedent terms on which H-E-B relies – "electronic device" and "mobile device" – appear in the second clause of the preamble. However, the term "spot-checking" (along with the term "verifying") appears in the first clause of the preamble, which describes the *purpose* of the claimed invention. Preamble terms that are used "only to state a

purpose or intended use for the invention" are not limiting. *Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320, 1328 (Fed. Cir. 2019) (internal quotations omitted). Thus, H-E-B's reliance on separate terms in a separate clause says nothing about whether the term "spot-checking" itself is limiting, as the claim is complete without that preamble term.

As the case on which H-E-B relies states, "dependence on *a particular disputed preamble phrase* for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (citations omitted, emphasis added). H-E-B has not here shown that the disputed preamble term "spot-checking" provides an antecedent basis for anything in the claim limitations. That is not surprising, as it does not. Further, the preamble is not "essential to understand the limitations or terms in the claim body," *id.*, as the claim recites a complete invention. Dkt. No. 53 at 3-4. H-E-B has not shown that "spot-checking" is limiting.

Further, DRA did not rely on "spot-check" during prosecution as H-E-B asserts. Dkt. No. 56 at 14-15. The added limitation on which H-E-B relies is "upon receiving an indication from the server indicating that the token is valid," which does obviously not include the term "spot-check." Dkt. No. 56 at 14. There was thus no "'clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art'" as H-E-B disingenuously asserts. Dkt. No. 56 at 15 (quoting *Catalina Mktg.*, 289 F.3d at 808).

### 2. "Spot-Checking" Is Not Limited to Visual Inspection

In arguing that "spot-checking" requires a visual inspection, H-E-B brings in yet another previously undisclosed term for construction—"inspected." H-E-B for the first time argues that "inspected" must be construed as a visual act. Dkt. No. 56 at 15. But apart from a cryptic statement that "the specification defines this inspection to be visual," H-E-B cites nothing from the

specification discussing the word "inspected," defining the word "inspected" as visual, or tying the word "inspected" to the here at issue word "spot-checking." H-E-B has thus failed to advance an actual argument concerning the specification and the Court should ignore these bare assertions.

H-E-B's prosecution argument is similarly muddled and incoherent. H-E-B states "DRA's assertion that visual inspection cannot be required by these claims is directly contradicted by the express disclaimer during prosecution that these steps must occur in each spot check." Dkt. No. 56 at 16. But H-E-B does not explain what "these steps" are or identify any visual inspection among the steps. Instead, H-E-B points to the "prompting" limitation, which contains no requirement of any visual inspection. *Id.* Further, DRA explained in its responsive brief that the Applicant's arguments concerning Carney did not amount to a requirement that retailer personnel be involved. Dkt. No. 55 at 3. It follows *a fortiori* that no "visual" inspection by any retailer personnel is required.

Finally, DRA did not conflate "spot-checking" and "verifying." As explained in DRA's responsive brief, DRA only addressed the two terms together in its opening brief as they are both non-limiting preamble terms. DRA never suggested they should have the same meaning. In fact, as demonstrated in DRA's alternative constructions for each term, "spot-checking" can be considered a specific type of verifying, *i.e.* "inspecting either (1) a receipt, (2) purchased items, and/or (3) the token to *verify* the consumer's purchase." Dkt. No. 53 at 6 (emphasis added).

### 3. "Spot-Checking" Does Not Require a Completed Transaction

H-E-B points to no intrinsic evidence limiting "spot-checking" to a completed transaction. H-E-B relies on the phrase "in-store purchase of goods and services," but this only begs the question, as a "purchase" may be contemplated and processed before it is completed. Dkt. No. 56 at 17-18. H-E-B thus assumes, again without explanation, that "[t]he noun 'purchase' in that subsequent limitation identifies that the transaction is already complete." *Id.* at 18. But as

explained in DRA's opening brief, "spot-checking" can be applied to transactions that are in process for the purpose of completing the transaction, making H-E-B's argument clear nonsense. Dkt. No. 53 at 6-7.

DRA's position also does not contravene the theft and loss prevention purposes of the patent, as H-E-B asserts. A pre-completion spot-checking can confirm the correctness and accuracy of the transaction and thus prevent inadvertent *loss*, as explained above. Similarly, reference in the specification to a visual inspection after a transaction is conducted on which H-E-B relies refers to the prior art, not the claimed invention. Dkt. No. 53 at 5-6.

In sum, H-E-B has not shown that "spot-checking" is limiting, nor has H-E-B shown that it is limited to a visual inspection if it is limiting.

### E.   "Verifying" Is Not Limiting, And Includes In-Process Transactions

The non-limiting preamble term "verify" is a generic term used broadly in a variety of contexts throughout the specification. H-E-B's effort to artificially limit the term has no basis in fact or law.

#### 1.   H-E-B Has Not Shown "Verifying" Is Limiting

H-E-B's argument that the preamble term "verifying" is limiting mirrors its argument concerning "spot-checking." In particular, H-E-B points to terms *other than* "verifying" in the preambles of the asserted claims to argue that "verifying" itself is limiting. As with "spot-checking," the term "verifying" does not provide an antecedent for any term in the body of the claims and thus is not limiting. *Catalina Mktg.*, 289 F.3d at 808.

#### 2.   "Verifying" Does Not Require a Complete Transaction

As with "spot-checking," H-E-B argues that "verifying" requires a complete transaction and that argument rests on an assumption that the term "purchase" in the claims and specification refers to a completed transaction. Again, H-E-B has not requested that "purchase" be construed

and H-E-B offers no support for its assumption that "purchase" refers *only* to completed transactions rather than in-process transactions. This failure dooms H-E-B's position.

H-E-B's reliance on the specification is also meritless. H-E-B's specification citations consist of nothing more than non-limiting examples that do not mandate limiting the claim terms in any way. Further, H-E-B provides no specific citations for its bald assertion that the terms "verify" and "verifying" in the specification are "used consistently with the claims to mean processing the unique token of a completed transaction." Dkt. No. 56 at 21-22. Such is not surprising, as it is simply not a true statement, as H-E-B well knows.

Indeed, H-E-B acknowledges that Figure 2 illustrates a "verifying" step in advance of a completed transaction, implicitly admitting that the specification uses "verifying" to refer to a transaction that is not yet complete. Dkt. No. 56 at 22. While H-E-B seeks to escape this clear disclosure by asserting that this is a different type of "verifying" than appears in the claims, the argument only confirms the correctness DRA's position—"verifying" is a generic term, used broadly in the specification, and it does not require a limiting construction as H-E-B proposes.

H-E-B did not propose "verifying the token or QR code" for construction, but the term "verifying" on its own. The specification makes clear that a "verifying" step does not require a complete transaction, and thus H-E-B's proposed construction is improper by H-E-B's own admission. Undeterred, though, H-E-B then introduces yet another belated claim construction argument, asserting that "the token is only issued as a result of the transaction being processed." Dkt. No. 56 at 22. H-E-B offers no support for this strained reading of "token" other than string cites to the specification and claims, but as stated above, "verifying" a transaction prior to completion prevents loss by preventing errors before completing the purchase and "token" does not change this fact.

H-E-B has not shown and cannot show that "verifying" is limiting, nor can it support its artificial limitation on the meaning of "verifying" if it is limiting.

### F. H-E-B Cannot Justify A Construction Of "Wirelessly Transmitting" That Excludes The Preferred Embodiment

H-E-B acknowledges that excluding scanning from "wirelessly transmitting" would exclude a preferred embodiment. Then, though, H-E-B does nothing to overcome the resulting presumption that H-E-B's proposed construction is incorrect. Instead, H-E-B argues that a related patent claims the preferred embodiment. Dkt. No. 56 at 24-25. But H-E-B cites no legal authority for the proposition that the presumption against construing a claim in a manner that excludes the preferred embodiment can be overcome by citing to a separate patent. Thus, H-E-B's proposed construction remains presumptively incorrect.

### G. H-E-B's Printed Matter Argument Makes No Sense

H-E-B has still not articulated why any of the terms identified with its "printed matter" argument are in fact "printed matter" and thus unpatentable.[3] Instead, H-E-B appears to argue that a claim that requires displaying information is *ipso facto* invalid under the "printed matter" doctrine. Dkt. No. 56 at 25-26. But H-E-B cites no authority for this proposition, which would invalidate countless patents drawn to display technology. H-E-B is also incorrect in assuming that DRA's explanation of the challenged information as "communicated" renders them invalid as transitory signals. Dkt. No. 56 at 25. H-E-B does not explain why all communicated information falls under the "transitory signal" exclusion of MPEP § 2106.03. H-E-B's "printed matter"

---

[3] H-E-B's belated indefiniteness argument should be ignored. Dkt. No. 56 at 25 n.10. In any case, H-E-B's meager footnote makes no serious effort to meet the clear and convincing evidence standard for invalidity due to indefiniteness.

doctrine-based arguments are substantively meritless, have never been fully articulated, and should be dismissed out of hand.

### H. H-E-B Offers No Justification For Limiting "Currently Unavailable For Purchase"

H-E-B admits that "[t]he term 'currently unavailable for purchase' is clear on its face." Dkt. No. 56 at 26. The Court should therefore decline to construe the term and apply the plain and ordinary meaning. Nonetheless, H-E-B presses on in its effort to limit the "clear on its face" claim language to certain disclosed embodiments, one of the "cardinal sins" of patent law. *Collaborative Agreements, LLC v. Adobe Systems Inc.*, No. A-14-CV-356-LY, 2015 WL 2250391, at *9 (W.D. Tex. May 12, 2015) (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001)).

H-E-B also misconstrues DRA's proposed construction as being "limited to purchases through the app." Dkt. No. 56 at 27. DRA's position is not that "currently unavailable for purchase" refers *only* to items not available for purchase through the app, but that it *includes* items that may be physically available in the store but not available for purchase via the claimed system and method. As H-E-B has offered no justification for excluding this species of unavailability from the claim term, the Court should apply the plain and ordinary meaning which would include this broader construction.

### I. The Court Should Reject H-E-B's Absurd Constructions Of The "Transmitting" And "Displaying" Terms

H-E-B continues to advance frivolous arguments concerning the "transmitting" and "displaying" terms, requiring that physical objects as opposed to information identifying those objects must be "transmitted" or "displayed." Compounding its lack of seriousness, H-E-B now simultaneously argues that the terms are "not facially invalid" but are nonetheless "invalid for lack of enablement, lack of written description, and indefiniteness." Dkt. No. 56 at 27-28. As an initial

matter, indefiniteness is a question of facial invalidity, and thus H-E-B's argument is self-contradictory.  Secondly, H-E-B has not advanced an invalidity argument based on lack of written description or lack of enablement, and thus those arguments should be ignored.

H-E-B is also incorrect in asserting that the Court cannot construe the claims as they would naturally be understood by a person of ordinary skill in the art.  Dkt. No. 56 at 28.  Indeed, for all its bluster concerning a person of ordinary skill in the art, H-E-B has not explained why a person with "a bachelor's degree in computer science or a related study and two years of experience with e-commerce and electronic transactions, or the equivalent" (Dkt. No. 54 at 4) would read the identified claim terms and assume that they require the teleportation of, *e.g.*, bananas.  As explained in DRA's responsive brief, H-E-B acknowledges that at worst the terms are a matter of careless drafting which would be understood by one of ordinary skill in the art.  The Court should disregard H-E-B's frivolous arguments.

## IV.   CONCLUSION

DRA respectfully requests that the Court adopt DRA's claim construction positions and reject H-E-B's unsupported efforts to inject improper limitations into the claims or argue that any claim terms are invalid as indefinite.

Dated:  December 6, 2019                           Respectfully submitted,

                                By: */s/ Robert R. Brunelli*
                                    Jeffrey G. Toler
                                    Texas Bar No. 24011201
                                        jtoler@tlgiplaw.com
                                    TOLER LAW GROUP, PC
                                    8500 Bluffstone Cove
                                    Suite A201
                                    Austin, TX 78759
                                    (512) 327-5515

        Todd P. Blakely (Admitted *pro hac vice*)
           tblakely@sheridanross.com
        Robert R. Brunelli (Admitted *pro hac vice*)
           rbrunelli@sheridanross.com
        Matthew C. Holohan (Admitted *pro hac vice*)
           mholohan@sheridanross.com
        Tara K. Hawkes (Admitted *pro hac vice*)
           thawkes@sheridanross.com
        SHERIDAN ROSS P.C.
        1560 Broadway, Suite 1200
        Denver, CO 80202
        Telephone:  303-863-9700
        Facsimile   303-863-0223
        litigation@sheridanross.com

        *Attorneys for Plaintiff Digital Retail Apps, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 6, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(b).

>                                    */s/ Robert R. Brunelli*
>                                    Robert R. Brunelli